IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

_____

GLOBAL GROWTH, LLC, GBIG ) 
CAPITAL, LLC, and GREG LINDBERG, )
)
        *Plaintiffs*, )
)     Case No. 1:20-cv-00248
    v. )
)
MIKE CAUSEY, in his official )
and individual capacities, )
)
        *Defendant*. )
_____)

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Global Growth, LLC ("Global Growth"), GBIG Capital, LLC ("GBIG Capital") and Greg Lindberg ("Lindberg") (collectively, "Plaintiffs") ask the court to deny the Motion to Dismiss (D.E. 19) and Memorandum in Support (D.E. 20) filed by Defendant Mike Causey ("Causey"). The court should deny the motion in its entirety, as follows.

### NATURE OF THE CASE

This is an action seeking redress for Causey's abuse of power and breach of the public trust. As insurance commissioner, he retaliated against Plaintiffs because their principal—Mr. Lindberg—supported Causey's opponent in his hotly contested election. Causey's actions and motivations are detailed at length in Plaintiffs' complaint, as are the staggering economic and other losses suffered by Plaintiffs at the hands of an overzealous

1

ersatz public servant. Those injuries are redressable under well-settled law, from constitutional violations under 42 U.S.C. § 1983 to state-law claims.

Causey has now moved to dismiss all of the claims against him, cobbling together a grab bag of arguments that are not at all appropriate at the motion-to-dismiss phase. Plaintiffs have stated cognizable claims and are entitled to discovery on those claims. Causey's motion should be denied in its entirety.

## STATEMENT OF FACTS

Causey is the North Carolina Commissioner of Insurance. (D.E. 1, Compl. ¶ 1.) This is an elected office that Causey assumed as the winner of the 2016 general election. (*Id.* ¶ 4.) His authority as Commissioner includes managing and directing the North Carolina Department of Insurance (the "Department") and its operations. The Department regulates the insurance industry in North Carolina. This regulatory oversight extends to life and annuity insurance companies domiciled in the State.[1]

Plaintiffs own several life and annuity insurance companies. (*See id.* ¶ 38.) Lindberg, through Global Growth and GBIG Capital, is the "ultimate controlling person" of these companies. (*Id.*) Three of these insurance companies are domiciled in North Carolina: Colorado Bankers Life Insurance Company ("Colorado Bankers"), Southland National Insurance Company ("Southland National") and Bankers Life Insurance Company ("Bankers Life"). (*Id.*) The Department regulates these three companies as a result. (*Id.*)

---

[1] General information about Causey, his authority, the Department, and the Department's duties is available at https://www.ncdoi.gov/about-doi.

2

This lawsuit arises from Causey's cold and calculated efforts to retaliate against Plaintiffs for supporting his opponent in the 2016 general election. Plaintiffs had openly and vigorously supported former Commissioner Wayne Goodwin, the incumbent. (*Id.* ¶¶ 60–61.) Causey never forgot it, nor would he forgive it. (*Id.* ¶¶ 7 & 62.)

Causey's post-election conduct was a betrayal of the public trust. As an elected official, he wielded the authority, powers, and resources of his office to bring about a personally and politically advantageous result, directly targeting Plaintiffs for his own gain. (*See id.* ¶ 1.)

Plaintiffs' complaint details Causey's actions and motivations. (*See generally id.* ¶¶ 7–8, 10–19 & 63–119.) Causey began plotting his revenge against Plaintiffs before he even took his oath of office. (*See id.* ¶¶ 8 & 62.) Thereafter, Causey used his newfound authority to color his Department's oversight of Plaintiffs' insurance operations; create a negative perception of Plaintiffs among regulators in other jurisdictions, the credit markets, the media, and law enforcement; and then harness that negativity (and the turbulence and uncertainty it generated for Plaintiffs in the insurance and credit markets) as a pretext for pursuing drastic regulatory action. (*Id.* ¶¶ 8 & 63.)

Causey's conduct has caused tremendous harm to Plaintiffs. Plaintiffs have seen Colorado Bankers, Southland National and Bankers Life pushed into rehabilitation. (*Id.* ¶ 116.) Plaintiffs have also lost debt financing deals, insurance acquisitions, product distribution partnerships, preferred equity investments, profits, and more. (*Id.* ¶¶ 20, 21 & 118.)

Case 1:20-cv-00248-UA-JEP   Document 25   Filed 07/29/20   Page 3 of 35

Causey's motion to dismiss is an attempt to avoid discovery into his bad acts, in an election year no less. But despite raising a hodgepodge of defenses, Causey never really develops any of them. That cursory treatment is hardly sufficient to justify dismissal of *any* of Plaintiffs' claims. And it is too late for Causey to try to remedy those deficiencies in a reply brief.

Plaintiffs discuss each of Causey's arguments in depth, below, showing why they are invalid, inappropriate at the Rule 12 stage, and/or otherwise inapplicable. Causey's motion to dismiss should be denied in its entirety, and Plaintiffs should be allowed their day in court.

## ARGUMENT

Plaintiffs first address Causey's request to dismiss their official capacity claims against him. Plaintiffs then address Causey's request to dismiss their individual capacity claims against him. Finally, Plaintiffs address Causey's argument that they lack standing to bring this lawsuit.

## I. PLAINTIFFS HAVE PROPERLY PLEADED OFFICIAL CAPACITY CLAIMS AGAINST CAUSEY

Causey moves to dismiss all federal claims brought against him in his official capacity, arguing that the claims are barred by the Eleventh Amendment and otherwise fail to state a claim for relief under Rule 12(b)(6). Neither contention is correct.

Case 1:20-cv-00248-UA-JEP   Document 25   Filed 07/29/20   Page 4 of 35

### A.      Plaintiffs' Claims are Not Barred By the Eleventh Amendment.

First, Causey argues that Plaintiffs' official capacity claims against him should be dismissed[2] because they are not based on an express waiver of immunity, are not based on a congressional abrogation of law, and seek something other than purely prospective non-monetary relief.  (D.E. 20 at 13–15.)  The first two exceptions are not at issue here.  Instead, Causey's argument fails because Plaintiffs do, in fact, seek prospective non-monetary relief.

The Eleventh Amendment poses no obstacle whenever a plaintiff satisfies the court's "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotations and alterations omitted).  A plaintiff adequately alleges such an ongoing violation of federal law by simply stating in the complaint how the official continues to presently violate federal law.  *Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002); *see also Papasan v. Allain*, 478 U.S. 265, 279 (1986) (dismissal is not merited if the essence of the claim is to "bring

---

[2] Causey asks the court to consider his Eleventh Amendment argument under Rules 12(b)(1), 12(b)(2) and 12(b)(6).  (D.E. 20 at 11 & 17.)  However, the Fourth Circuit considers motions to dismiss based on the Eleventh Amendment under Rule 12(b)(1) or Rule 12(b)(6).  *See Abril v. Virginia*, 145 F.3d 182, 184 (4th Cir. 1998).  The trend appears to be to consider such motions under Rule 12(b)(1).  *Haley v. Virginia Dep't of Health*, No. 4:12-cv-0016, 2012 U.S. Dist. LEXIS 161728, at *2 n.2 (W.D. Va. Nov. 13, 2012).  Further, where the movant contends, as Causey does here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," the court assumes the plaintiffs' allegations are true and affords the same procedural protection the plaintiff would receive under Rule 12(b)(6).  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Case 1:20-cv-00248-UA-JEP   Document 25   Filed 07/29/20   Page 5 of 35

an end to a present violation of federal law"). Moreover, the plaintiff need only allege—not prove—the ongoing violation of federal law at the pleading stage. *D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334 (4th Cir. 2010).

### 1. *Plaintiffs allege ongoing violations of federal law.*

Plaintiffs allege ongoing violations of federal law. The Complaint alleges that "Causey has violated and continues to violate 42 U.S.C. § 1983," (D.E. 1 ¶¶ 128, 134, 141), and asserts First Amendment retaliation, due process, and equal protection claims based on those ongoing violations. The Complaint alleges, in detail, how Causey abused his power and authority to deprive Plaintiffs of these fundamental protections guaranteed under federal law. The Complaint further and specifically alleges how Causey's violations resulted in the placement of the insurance companies in rehabilitation—where they remain today under Causey's authority. (D.E. 1 ¶ 125(7).)

Causey insists that these wrongs are not "ongoing." Causey asserts that the current rehabilitation proceedings do not count as an ongoing violation because Lindberg consented to them, and that all other instances of allegedly wrongful conduct have already occurred. (D.E. 20 at 16.) That is not correct.

Causey cannot hide behind Lindberg's "consent" to rehabilitation, extracted after Causey's scheme was well underway. That is, placing dispositive weight on that "consent" ignores the abuses of power and violations of Plaintiffs' rights through which this "consent" was procured. Plaintiffs, including Lindberg, were coerced and pressured to consent to rehabilitation and Causey's appointment as Rehabilitator—just as alleged in the complaint. (D.E. 1 ¶ 125(7).) The complaint goes on to describe how Causey manipulated conditions

6

to make rehabilitation of Plaintiffs' North Carolina-domiciled insurance companies unavoidable. (*See, e.g.*, *id.* ¶ 18.) The rehabilitation and Causey's powers over Plaintiffs' insurance holdings were procured through, and are continuing evidence of, Causey's violations of Plaintiffs' rights.

Causey's recitation of his statutory powers is no defense, either. Yes, Causey is the court-appointed Rehabilitator, with wide-ranging powers to take title, possession, administration, and control of the assets of the North Carolina insurance companies. But that has nothing to do with the factual question of whether those companies were placed into rehabilitation under duress and as a result of Causey's already-accomplished unconstitutional acts, and thus whether and how Causey's daily malfeasance and mismanagement of his duties as Rehabilitator continue to harm Plaintiffs. Those are questions for discovery, not a Rule 12 motion.

### 2. *Plaintiffs seek prospective relief.*

Causey further argues that Plaintiffs do not ask only for prospective relief *for the purposes of their official capacity claims*. (D.E. 20 at 16.) But they do. (*See* D.E. ¶¶ 128–29 (First Amendment retaliation), 134–35 (equal protection) & 141–42 (due process).) Each claim carefully differentiates between the relief sought from Causey in his official capacity (prospective declaratory and injunctive relief) and that sought from him in his individual capacity (monetary relief and recovery of punitive damages). (*Id.*)

Nor, as Causey contends, were Plaintiffs required to meet some heightened pleading standard to spell out the precise injunctive relief sought. (*See* D.E. 20 at 16.) In any event, Plaintiffs *do* explain, with great detail, the unconstitutional conduct they seek to enjoin.

7

(*See, e.g.*, D.E. 1 ¶¶ 125, 128 (First Amendment retaliation), 133–34 (equal protection) & 139, 141 (due process).)  With an election looming, Causey's retaliation, unequal treatment, and process violations are likely to ramp up, not down.  Regardless, the allegations in the complaint are enough to pass the "straightforward inquiry" appropriate at this stage of the litigation.  *See Verizon Maryland*, 535 U.S. at 645.

**B.      Plaintiffs State a Claim for First Amendment Retaliation.**

Causey argues that Plaintiffs' claim for First Amendment retaliation should be dismissed because Plaintiffs have failed to allege each essential element of their claim. (D.E. 20 at 18–20.)  This argument is meritless.

To state a valid claim for First Amendment retaliation, a plaintiff must sufficiently allege that "(1) his speech was protected, (2) the 'alleged retaliatory action adversely affected' his protected speech, and (3) a causal relationship between the protected speech and the retaliation."  *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000)).  Plaintiffs have adequately alleged each element here.

### 1.      *Plaintiffs' speech was protected.*

Plaintiffs have alleged protected speech.  The complaint states that "Plaintiffs engaged in constitutionally protected activity when, among other things, Lindberg and Plaintiffs' employees made individual monetary contributions to former Commissioner Goodwin's election campaign. (D.E. 1 ¶ 124.)  Causey concedes that these donations "are protected free speech."  (D.E. 20 at 18.)  Thus, the first element is properly alleged.

8

2.       *Causey's retaliatory action adversely affected Plaintiffs' protected speech.*

Plaintiffs allege that Causey took numerous retaliatory measures in response to Plaintiffs' exercise of their First Amendment rights, adversely affecting their speech.  (*See, e.g.*, D.E. 1 ¶ 125(1)-(7).)   In response, Causey argues that Plaintiffs "fail to forecast sufficient evidence" of an actionable claim, improperly importing the summary-judgment standard into a Rule 12 analysis.  (D.E. 20 at 18.)  More specifically, he argues: (a) that retaliatory investigations may not form the basis of a First Amendment retaliation claim; (b) that Causey's conduct did not have a "chilling effect or an adverse impact" on the exercise of Plaintiffs' constitutional rights; and (c) that legally providing information to other regulators and law enforcement is not retaliatory absent a corresponding threat, coercion or intimidation.  (*Id.* at 17–19.)

Critically, Causey only takes aim at *some* of the retaliatory conduct alleged in the complaint, apparently conceding that the rest of the acts are properly alleged as retaliatory conduct.  After all, in addition to the acts that Causey disputes, Plaintiffs allege that Causey engaged in a range of other retaliatory conduct.

Specifically, Plaintiffs allege Causey caused the Department to choke off Plaintiffs' access to routine Department functions (D.E. 1 ¶ 65); caused the Department to slow the processing and approval of Plaintiffs' filings (*id.* ¶ 65); caused the Department to open "a financial analysis of the insurers' investment portfolios and a review of Lindberg's overall financial condition" (*id.* ¶ 74); encouraged a criminal investigation of Lindberg on false pretenses (and then actively participated in it) (*id.* ¶ 79); "empowered his team to direct

9

Rector to include findings that were factually inaccurate, legally incorrect, and false" (*id.* ¶ 85); declared long-filed disclaimers of affiliation to be invalid without providing notice or findings of fact, which is contrary to North Carolina law (*id.* ¶ 93); and reneged on a memorandum of understanding between the parties (*id.* ¶ 125(3)). Plaintiffs further allege that this conduct adversely affected them. (*See, e.g.*, *Id.* ¶¶ 104–105 (reneging on memorandum of understanding precipitated wind-downs and sales of companies).) These allegations are more than enough to sustain a claim for First Amendment retaliation.

> a.    *In the Fourth Circuit, a retaliatory investigation <u>can</u> form the basis of a First Amendment retaliation claim.*

Causey suggests that a retaliatory investigation may not form the basis of a First Amendment retaliation claim in this circuit. (D.E. 20 at 17–18.) Not so.

Both the United States Supreme Court and the Fourth Circuit have adopted broad definitions of retaliatory conduct. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."); *Trulock v. Freeh*, 275 F.3d 391, 404 (4th Cir. 2001) (noting that any conduct is retaliatory if plaintiff proves "that the defendant's alleged retaliatory action adversely affected his constitutionally protected speech.").

Whether a given government action is retaliatory is "a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378,

398 (6th Cir. 1999) (noting that "the definition of adverse action is not static across contexts")). Almost any kind of government conduct can be retaliatory if it would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* This includes conduct that, although it appears proper on its face, is "taken for different reasons." *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 782 (4th Cir. 1993); *see also Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006) ("Tougher scrutiny by agencies whose actions are afforded a presumption of regularity is adverse regulatory action, because it implies harsher, or at least disparate, treatment of" the speaker); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("bad faith investigations" are retaliatory).

Against that weight of appellate authority, Causey counters with a decision from a sister district court that stated "the Fourth Circuit has not definitively addressed whether retaliatory investigations are constitutional violations in the context of First Amendment." *Nance v. Ingram*, No. 7:14-CV-9-FL, 2015 U.S. Dist. LEXIS 131354, at *5 (E.D.N.C. Sept. 29, 2015) (deciding the case on other grounds—the absence of adverse effects from the investigation in question). *Nance* also points to a footnote in a Supreme Court opinion, which observed that "[w]hether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation is not before us." *Hartman v. Moore*, 547 U.S. 250, 262 n.9, 126 S. Ct. 1695 (2006). Yet, *Nance* overlooks that the Fourth Circuit already provides guidance on this question.

11

In *McWaters v. Cosby*, the Fourth Circuit affirmed a lower court finding that a public official's retaliatory investigation can give rise to a claim under 42 U.S.C. § 1983.  54 F. App'x 379, 383 (4th Cir. 2002) ("We conclude, for substantially the same reasons given by the district court, . . . that McWaters' allegations that the defendants took adverse action against her with the purpose of chilling her protected speech are sufficient to state a First Amendment retaliation claim.").  The lower court denied the defendant's motion to dismiss because it found that the plaintiff suffered at least two appreciable adverse effects as a direct result of the investigation—the need to retain counsel and expend financial resources in response.  *McWaters v. Rick*, 195 F. Supp. 2d 781, 800–01 (E.D. Va. 2002).

To be sure, the Fourth Circuit's affirmance in *McWaters v. Cosby* was unpublished. But it still serves as persuasive authority, and shows that an investigation may be retaliatory—and therefore actionable in this circuit—where it has an adverse effect on the plaintiff.  Besides, for such a fact-based inquiry, there would be no reason for a per se rule that carves out certain kinds of retaliatory conduct as being beyond reproach.

        b.      *Causey's conduct has had an adverse impact on Plaintiffs'*
                 *exercise of their constitutional rights.*

Causey also asserts, in conclusory fashion, that his conduct did not have a "chilling effect or an adverse impact" on the exercise of Plaintiffs' constitutional rights.  (D.E. 20 at 18.)  But a dispute over causation is rarely appropriate for resolution as a matter of law at any time during a case, let alone on the unanswered pleadings.

Whether Causey's actions had "a chilling effect or an adverse impact [on Plaintiffs' right to free speech] is an objective one"—that is, "whether a similarly situated person of

12

'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *The Baltimore Sun v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006).

Plaintiffs have alleged that Causey engaged in retaliatory conduct that adversely affected or "chilled" Plaintiffs' exercise of their constitutional rights. In particular, Plaintiffs allege that after engaging in the constitutionally protected activity of donating to Causey's political rival (D.E. 1 ¶ 124), Causey retaliated against them by what began as a "routine financial examinations," but then graduated to more extreme conduct. This conduct included opening a financial analysis of investment portfolios, a review of Lindberg's overall financial condition, and knowingly directing one of the consultants to make findings that were factually inaccurate, legally incorrect, and false. (*See id.* ¶ 85.) Global Growth had to spend over $1.7 million to secure and submit records in response. (*Id.* ¶ 88.) These records included GAAP-compliant financial statements, a third-party valuation of certain loans, an audit of Lindberg's net worth, financial records, and a valuation of Lindberg's assets by a Big Four accounting firm. (*Id.* ¶ 87.) Still, Causey discounted this documentary support and pressed ahead with measures for Plaintiffs' insurance operations that were more restrictive than North Carolina law. (*Id.* ¶¶ 89, 92, 98 & 99; *see also id.* ¶ 125 (itemizing several retaliatory acts by Causey) & ¶ 126 (alleging that these acts were intended to deter Plaintiffs from exercising their First Amendment rights).)

Each of these actions effectively punished Plaintiffs for exercising their constitutional rights. Faced with these consequences, no "similarly situated person of

'ordinary firmness'" would dare make a political contribution or otherwise participate publicly in an election. *Suarez*, 202 F.3d at 686. Those allegations are more than sufficient.

<blockquote>

c. *Causey's provision of information to regulators and law enforcement was accompanied by threats of punishment and/or adverse action.*

</blockquote>

Next, Causey argues that his defamatory and disparaging speech cannot be retaliation as a matter of law, absent "a threat, coercion, or intimidation intimating that punishment, sanction, or adverse action will imminently follow." (D.E. 20 at 19 (quoting *Suarez*, 202 F.3d at 685).)

To be sure, *Suarez* is controlling Fourth Circuit precedent, as far as it goes.[3] But even *Suarez* recognizes that a claim lies where there is such intimidation. Here, Plaintiffs allege they confronted Causey in November 2017 about false and disparaging statements that had been made about them. (D.E. 1 ¶ 78.) Causey responded by banning two persons from the Department's headquarters and telling Lindberg that he could leave the State if he did not like it. (*Id.*) Those actions and statement were indeed a "threat, coercion, or intimidation intimating that punishment, sanction, or adverse action will imminently follow." *Suarez*, 202 F.2d 685. In fact, Causey more than *threatened* adverse actions—he has been *implementing* those adverse actions ever since.

---

[3] At least one circuit court, however, has called *Suarez* into question. *Echols v. Lawton*, 913 F.3d 1313, 1322 (11th Cir.), cert. denied, 139 S. Ct. 2678 (2019) (noting that *Suarez* "appear[s] to rest on a misreading of *Paul v. Davis*, 424 U.S. 693 (1976)").

Causey may, of course, attempt to paint some different narrative in discovery. But his counterfactuals have no place in a Rule 12 analysis. Thus, these allegations likewise support Plaintiffs' claim for First Amendment retaliation.

### 3. *Plaintiffs have sufficiently alleged causation.*

Finally, Causey asserts that Plaintiffs' First Amendment retaliation claim should be dismissed because he "acted on the basis of a legitimate, non-retaliatory concern." (D.E. 20 at 20 (quotations and internal citation omitted).) Specifically, Causey states his "[c]oncerns about the financial condition of Lindberg's NC insurance companies raised as a result of Causey's required regulation of those companies . . . , provided a sufficient non-retaliatory basis for [his] continued regulatory actions[.]" (*Id.*) This argument is untimely and irrelevant.

Plaintiffs agree they must *eventually*—at trial—prove that, "but for the protected expression[,] [Causey] would not have taken the alleged retaliatory action[,]" if they expect to prevail. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (quotations and internal citation omitted). At this stage, however, Plaintiffs need only allege knowledge and temporal proximity in order to reach discovery. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005); *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (noting that retaliation may exist after a significant time lapse if the retaliation occurred "at the first available opportunity"). Plaintiffs have alleged exactly that here. They allege that Causey was aware of their support for his 2016 general election opponent's campaign. (*See* D.E. 1 ¶¶ 4–5 & 61.) They also allege that, after his election victory, Causey began plotting his revenge. (*See id.* ¶¶ 6–8.) Finally, they allege that

15

Causey began abusing his new authority "almost immediately" after he took office on January 1, 2017. (*Id.* ¶ 62.) This included ordering a surreptitious investigation of Lindberg within 30 days of taking office. (*Id.* ¶ 66.)

Causey seems to recognize the sufficiency of these allegations, because his argument focuses on his purported rationale for his actions. Again, that is a summary-judgment or trial argument. Besides, it ignores the many instances where Plaintiffs allege a causal link between Causey's conduct and harm they experienced. (*See, e.g.*, D.E. 1 ¶¶ 102–104 (Causey reneges on memorandum of understanding)). Causey's argument also seems to ignore that "a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right . . . even when the act of the public official, absent the retaliatory motive, would otherwise have been proper." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). Accordingly, Causey's request to dismiss Plaintiffs' claim for First Amendment retaliation is without merit.

### C. Plaintiffs State a Claim for Equal Protection Violations.

Next, Causey argues that Plaintiffs have failed to state an actionable Fourteenth Amendment equal protection claim because they do not allege that they "received unequal treatment from the [Department]." (D.E. 20 at 21–22.) Specifically, Causey supposes that Plaintiffs could not have been treated differently because, unlike the example they cite in the complaint, they do not allege they applied for and were denied a rate increase. (*Id.*) Causey's argument fails because it both misstates the pleading standard for "class-of-one" equal protection claims and is premature.

16

A plaintiff bringing an equal protection claim must identify persons materially identical to him or her who have received different treatment. *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016), *vacated on other grounds*, 849 F.3d 114 (4th Cir. 2017) (en banc). But this *does not* mean the plaintiff and comparators must be so identical that only fine-grained distinctions separate them; rather, the similarity need only be "extremely high." *Id.* This same principle extends to class-of-one equal protection claims. *See King v. Rubenstein*, 825 F.3d 206, 220 – 21 (4th Cir. 2016); *Willis v. Town of Marshall*, 275 F. App'x 227, 233 (4th Cir. 2008) (In a class-of-one claim, "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

Here, Plaintiffs allege that there was at least one similarly situated company that Causey has intentionally treated differently. (D.E. 1 ¶ 133.) Plaintiffs further allege there was no rational basis for this difference in treatment. (*Id.*) Specifically, Plaintiffs allege that, despite the "superior financial positions" of Plaintiffs' North Carolina insurers, Causey approved favorable regulatory actions, including "approval for multiple rate increases," to a financially unstable insurer. (*Id.*) Thus, Causey conferred benefits to the owner(s) and controlling person(s) of the other insurer that he would not confer upon Plaintiffs.

Companies eligible for the same treatment must be treated equally. *See, e.g., Woods v. City of Greensboro*, 855 F.3d 639, 650–51 (4th Cir. 2017) (equal protection requires that the government defendant treat all minority-owned and nonminority-owned businesses

equally).  Because of this, Causey's conclusory statement that the Plaintiffs did not apply for a rate increase is misplaced.

*First*, even though the approved rate increase is symptomatic of Causey's unequal and irrational treatment of Plaintiffs, Causey's argument implicitly admits that Plaintiffs have otherwise alleged an adequate comparator for their equal protection claim.  Causey does not assert that Plaintiffs' proposed comparator was not similarly situated; rather, he focuses on the alleged difference *in treatment*.

*Second*, whether Plaintiffs' insurance companies went through a necessary application process to be able to receive multiple rate increases is a question of fact that goes beyond the pleadings.  Plaintiffs must merely plead "sufficient facts to justify an inference, plausibly and reasonably indulged, that [Causey] treated it differently from the way [he] has treated . . . [other] businesses under arguably similar circumstances, and that [he] did so" for an improper purpose.  *Woods*, 855 F.3d at 650.  Thus, Causey's request to dismiss Plaintiffs' equal protection claim should be denied.

### D.    Plaintiffs State a Claim for Procedural Due Process Violations.

Causey claims that Plaintiffs do not state an actionable procedural due process claim because he believes the only harm they allege is reputational injury.  (D.E. 20 at 22.)  He further states, without elaboration, that Plaintiffs' other allegations are insufficient to avoid dismissal under Rule 12(b)(6).  (*Id.*)  Causey fails to satisfy his burden with these conclusory arguments.

Procedural due process guarantees "notice and an opportunity to be heard" before a government official does anything to affect an individual's rights.  *Wolf v. Fauquier County*

*Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009). It is not a one-size-fits-all proposition, but "a flexible concept that a court must adapt to the particular circumstances of the case at hand." *Baugh v. Woodard*, 808 F.2d 333, 336 (4th Cir. 1987). This means the existence of an actionable procedural due process claim depends on "an appraisal of the totality of facts" and not a "mechanical application" of the law to the facts. *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998).

Causey's argument for dismissal is simply an inartful request for the court to conduct the very same "mechanical application" of the law to the facts that the Supreme Court has rejected. The only specific complaint that Causey makes about Plaintiffs' procedural due process claim regards their allegations of reputational injury. Plaintiffs agree they must allege deprivation of a "cognizable liberty or property interest" that is "more than reputational injury." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012). Here, though, Plaintiffs have alleged "tangible" deprivations suffered because of Causey's "arbitrary and capricious" actions. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (reputational injury must be accompanied by a loss of "more tangible interests"). As Plaintiffs allege in the complaint, Causey repeatedly violated their right to a stable regulatory framework by making false and defamatory statements about Plaintiffs, arbitrarily reversing the Department's considered position on affiliated investments, and reneging on an agreement with Plaintiffs, among many other things. (*See, e.g.*, D.E. 1 ¶ 139.) These actions took a toll on Plaintiffs' reputation in the wider insurance industry, but they also caused "economic losses in excess of $500 million." (*Id.* ¶ 21.) In other

words, Causey's arbitrary and capricious actions led directly to one of the more concrete tangible injuries—the loss of money.

Further, a complaint does not need to include "detailed factual allegations" to avoid a Rule 12(b)(6) dismissal, but it must have enough detail to move beyond mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs allege numerous instances of where Causey engaged in arbitrary, capricious and deliberate conduct that deprived Plaintiffs of a liberty or property interest and caused them tangible harm. (*See, e.g.*, D.E. 1 ¶ 139.) Plaintiffs have included more than enough information in their complaint to support their procedural due process claim. Therefore, Causey's request to dismiss this claim should be denied.

## II. PLAINTIFFS PLEAD ACTIONABLE INDIVIDUAL CAPACITY CLAIMS AGAINST CAUSEY

Causey also moves to dismiss the federal and state law claims that Plaintiffs bring against him in his individual capacity. Causey alternately argues that certain immunities and defenses bar these claims, and that Plaintiffs fail to state a claim under Rule 12(b)(6). Causey's arguments here fail for numerous reasons.

### A. Plaintiffs' Federal Law Claims.

Causey moves to dismiss Plaintiffs' individual capacity federal claims on the ground that they are really official capacity claims and are otherwise barred by qualified immunity. (D.E. 20 at 23–26.) These arguments do not provide a basis for dismissal.

Causey asserts that, because he was supposedly acting "pursuant to his duties as Commissioner" at all times, Plaintiffs' claims here should be recharacterized as official

20

capacity claims. (*Id.* at 23.) Causey cites no authority in support. Indeed, he misses the central distinction between claims against a person in his individual capacity and his official capacity—who pays.

Individual capacity claims against a public official are actionable where they do not seek to impose liability on the government as the "the real party in interest." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Amendment does not bar a plaintiff from seeking damages against a government official in his individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). Thus, whether the government or the individual is the real party in interest depends on whether the relief the plaintiff seeks is aimed at the "official's personal assets," *id.* at 167, or at the "governmental unit's treasury." *LCS Servs., Inc. v. Hamrick*, 948 F.2d. 1281, 1283 (4th Cir. 1991).

Plaintiffs' federal claims distinguish the relief they seek from Causey in his official capacity from the relief they seek from him in his individual capacity. (*See* D.E. 1 ¶¶ 129, 135 & 142.) Plaintiffs recognize they are not entitled to a recovery of monetary damages from the State via their official capacity claims against Causey. Accordingly, they seek to hold Causey personally liable for developing a personally and politically motivated retaliatory scheme that he implemented through his authority and powers as Commissioner. (*See id.* ¶¶ 7–8.) Plaintiffs allege Causey began developing this scheme as a private citizen, before he even took office. (*See id.*)

Those allegations are enough to show that Plaintiffs' individual capacity federal claims should proceed. Even so, an official's assertion of qualified immunity in response is also an indication that he or she considers the "the plaintiff's action as being against [him

21

or her] personally." *Biggs v. Meadows*, 66 F.3d 56, 62 (4th Cir. 1995). Causey does indeed invoke qualified immunity as a defense to Plaintiffs' claims. (D.E. 20 at 24.) Therefore, dismissal on this first point is improper.

Causey next asserts that qualified immunity bars these individual capacity claims because Plaintiffs fail to allege a violation of a "clearly established" right. (D.E. 20 at 24.) Causey contends there is no clearly established right to: (1) be free from a retaliatory investigation; (2) a rate increase; or (3) a stable regulatory environment. (*Id.*) However, as already shown, retaliatory investigations (and speech) may serve as the basis for a First Amendment retaliation claim. *See* § I.B *supra*. Rate changes may also form the basis of claims brought under § 1983. Indeed, *Ex parte Young* itself was a suit against state officials with respect to a reduction in rates. 209 U.S. at 129. *Verizon Maryland* also dealt with state officials' enforcement of a regulatory regime. 535 U.S. at 645–46. Therefore, Causey's request to dismiss the federal law claims that Plaintiffs bring against him in his individual capacity should be denied.

### B. Plaintiffs' State Law Claims.

Causey moves to dismiss Plaintiffs' individual capacity claims for defamation, tortious interference and fraud. He asserts the claims are barred by various immunities and defenses and otherwise fail to state a claim for relief under Rule 12(b)(6). These arguments do not support dismissal either.[4]

---

[4] Causey also argues that Plaintiffs cannot bring their state law claims against him through 42 U.S.C. § 1983. (D.E. 20 at 36–37.) Plaintiffs agree, and they do not attempt to do so. (*Compare* D.E. 1 ¶ 134 (alleging violation of § 1983 through First Amendment retaliation) *with* ¶¶ 152–154 (not mentioning § 1983 with respect to tortious interference claim).)

22

### 1. *Public Official Immunity Does Not Bar Plaintiffs' State Law Claims.*

First, Causey claims public official immunity. (D.E. 20 at 27–35.) Causey asserts that this immunity applies because (1) his allegedly wrongful conduct is inextricably tied to his role as Commissioner, (2) his alleged acts of wrongdoing were actually legitimate regulatory acts carried out in the performance of his official duties, and (3) he was merely engaging in oversight. *Id.*

Causey's argument is misguided. Public official immunity is not a defense to intentional torts in North Carolina. *Mandsager v. Univ. of N. Carolina*, 269 F. Supp. 2d 662, 681 (M.D.N.C. 2003) (citing *Wells v. North Carolina Dep't of Corr.*, 152 N.C. App. 307, 567 S.E.2d 803, 813 (2002)). Defamation, tortious interference and fraud are intentional torts. *See Window Gang Ventures, Corp. v. Salinas*, No. 18 CVS 107, 2019 NCBC LEXIS 24, at *26 (N.C. Super. Ct. Apr. 2, 2019) (fraud); *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166 (2013) (defamation); *Beck v. City of Durham*, 154 N.C. App. 221, 230, 573 S.E.2d 183 (2002) (tortious interference). Therefore, public official immunity does not apply to Plaintiffs' state law claims against Causey.

Causey goes on to cite *Golden Rule Ins. Co. v. Long*, 113 N.C. App. 187, 439 S.E.2d 599 (1993), for the proposition that "allegations of wrongdoing [which] are legitimate regulatory acts, carried out in the performance of official duties cannot be evidence of malice." (D.E. 20 at 35.) There are two problems with this.

*First*, Causey begrudgingly admits that the court in *Golden Rule* decided the question of whether conduct is legitimate regulatory conduct *on summary judgment*. *Id.* at 33 ("Although, *Golden Rule* was decided on summary judgment, . . . ."). In other words,

the issue is a fact question that cannot be resolved at this stage. Causey fails to present any authority or information that suggests the court should resolve the issue now.

*Second*, Causey misreads the holding in *Golden Rule*. The court actually found that the Commissioner "may still be liable in his individual capacity if plaintiff can establish that he acted with malice" even if he "did not act outside the scope of his statutory authority." *Golden Rule*, 113 N.C. App. at 197. In other words, immunity applies only when "a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, *and acts without malice or corruption*[.]" *Grad v. Kaasa*, 312 N.C. 310, 321 S.E.2d 888, 890 (1984) (emphasis added). Plaintiffs make numerous allegations that go directly to Causey's malice and corruption. (*See, e.g.*, D.E. 1 ¶¶ 7–8, 10–12, 15, 64–66, 76, 90–91, 104, 149 & 157.) Dismissal is not proper where the plaintiff makes sufficient allegations of malice or corruption. *See Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 526, 402 S.E.2d 862 (1991) (government officials are not immune "from personal liability for any actions which may have been corrupt, malicious *or* perpetrated outside and beyond the scope of official duties." (emphasis added)). Therefore, Causey's request to dismiss the state law claims based on public official immunity should be denied.

### 2. *Plaintiffs State a Claim for Defamation.*

Causey also asks this Court to dismiss Plaintiffs' claim for defamation against him in his individual capacity for three reasons: (1) Plaintiffs fail to explicitly allege whether the statements are per se or per quod defamatory; (2) the affirmative defense of qualified privilege applies; and (3) the one-year statute of limitations applies to all statements that

Plaintiffs base this claim upon.[5] (D.E. 20 at 38–39 & 42–43.) These reasons do not support dismissal.

*First*, the complaint expressly seeks a recovery for defamation *per se*. (*See* D.E. 1 ¶ 148 ("Individually and taken together, the statements are defamatory *per se*.")) A false statement to others that "impeaches [the plaintiff] in his or her trade or business" is per se defamatory and malice and special damages "are presumed." *Jolly v. Academy Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005). As Plaintiffs allege, Causey made false and malicious statements to insurance regulators, federal law enforcement authorities and others about Plaintiffs' honesty and trustworthiness, the capitalization of their businesses, the value of their business assets, and their business practices. (*See, e.g.*, D.E. 1 ¶¶ 11, 76 & 145.) These and other false statements "impeach Plaintiffs in their business and are derogatory to their character and standing as businesspersons." (*Id.* ¶ 148.) These allegations are sufficient to state a claim for defamation.

*Second*, qualified privilege is an affirmative defense that Causey asks the Court to apply as a matter of law. A 12(b)(6) motion is "generally not an appropriate mechanism to adjudicate the merits of an affirmative defense" except in extraordinarily rare

---

[5] The heading for the section of Causey's brief which addresses limitations is "Plaintiffs' claims are barred by the statute of limitations." (D.E. 20 at 42.) However, the substantive argument seems to focus solely upon limitations for Plaintiffs' defamation claim. (*See id.* ("Plaintiffs' defamation claims are barred by the applicable statute of limitations.")). In the unlikely event that Causey is attempting to apply North Carolina's one-year limitations period to the federal law claims that Plaintiffs bring through 42 U.S.C. § 1983, his attempt is misguided, The limitations period "for personal-injury torts" applies to § 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). North Carolina's limitations period for personal injury claims is three years. N.C. Gen. Stat. § 1-52(16). Plaintiffs filed this lawsuit on March 16, 2020, well within the limitations period for their § 1983 claims.

circumstances. *Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183, 183 (4th Cir. 2020). Those circumstances exist where facts supporting each element of the defense "clearly appear[] on the face of the complaint." *Id.* (quotations and citations omitted); *cf. Board of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019) ("[B]y considering the viability of potential defenses, the district court here failed to view the complaint's allegations—including all reasonable inferences—in the Fund's favor as the non-moving party.").

An essential element of the qualified-privilege defense is that the defamatory statement was made in good faith. *Towne v. Cope*, 32 N.C. App. 660, 663, 233 S.E.2d 624 (1977). Whether a defamatory statement was made in good faith is a fact question, and Rule 12(b)(6) dismissal is not proper where the complaint alleges the statement was made with actual malice. *See Andrews v. Elliot*, 109 N.C. App. 271, 276, 426 S.E.2d 430 (1993) (allegations of actual malice were "sufficient to overcome at the pleading stage the defense of qualified privilege"). In addition to alleging that Causey acted with actual malice, (D.E. 1 ¶ 149), Plaintiffs allege numerous instances where Causey's blatant disdain for Plaintiffs and disregard for the truth rose to the level of actual malice. (*See, e.g., id.* ¶¶ 79 (untrue statement to law enforcement), 85–86 (release of Rector Report) & 139 (statements to regulators and others).) Thus, dismissal based on this affirmative defense is improper.

*Third*, and finally, the one-year limitations period does not completely bar Plaintiffs' claim for defamation. The clock on defamation claims begins at the time the defendant makes a defaming remark, and each new defaming remark is a separate tort with a separate clock. *See Gibson v. Mut. Life Ins. Co. of New York*, 121 N.C. App. 284, 287, 465 S.E.2d

56 (1996). In the year preceding the filing of this lawsuit, Causey made false comments about the "routine financial examination from 2017 in order to further impugn Plaintiffs' character and standing as businesspersons. (*See* D.E. 1 ¶ 115 ("There were questions on some of the financials" and "[t]here were loopholes being exploited").) Therefore, Causey's request to dismiss Plaintiffs' defamation claim should be denied.

3. *Plaintiffs State a Claim for Tortious Interference with Existing Relationships or Contracts.*

Causey asks the Court to dismiss Plaintiffs' claim for tortious interference because they plead interference with "relationships" instead of with "contracts." Causey also asserts that Rule 12(b)(6) dismissal is proper because his conduct was justified. (D.E. 20 at 39–41.) These narrow grounds for dismissal are not sustainable.

Causey's first ground for dismissal is one of semantics, charging Plaintiffs with failing to use the word "contract" in describing a contractual relationship. This linguistic nit-picking overlooks the actual substance of the allegations, namely, that Plaintiffs had an existing contractual relationship for the purchase of Lincoln Benefit Life Insurance Company that Causey's conduct ruined. (*See* D.E. 1 ¶¶ 81, 107 & 153.)

Further, justification is an affirmative defense that Causey has yet to plead or prove. *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916 (1992). Whether Causey's conduct was justified goes to the merits, rather than the sufficiency, of Plaintiffs' pleadings. Even then, Plaintiffs allege Causey employed his authority as Commissioner to retaliate against Plaintiffs for supporting his political opponent, (*see, e.g.*, D.E. 1 ¶ 149), creating a fact question on Causey's justification defense. *Filmar Racing,*

*Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733 (2001) (complaint must allege no motive for interference other than malice). Therefore, Causey's request to dismiss this tortious interference claim should be denied.

    4.    *Plaintiffs State a Claim for Tortious Interference with Prospective Relationships.*

Next, Causey asks the Court to dismiss Plaintiffs' claim for tortious interference with prospective business relationships because his actions were justified or privileged. Specifically, Causey bases this argument on the assertion that his conduct fell within the scope of his official duties. (D.E. 20 at 39–41.)

This argument again asks the Court to grant Rule 12(b)(6) dismissal based on an affirmative defense. *See Embree Constr.*, 330 N.C. at 498. As already shown, dismissal based on an affirmative defense is acceptable only in extraordinarily rare circumstances. *Briscoe*, 799 F. App'x at 183. Causey again fails to show that this proceeding qualifies.

Further, Plaintiffs' allegations are sufficient to raise a fact question as to whether Causey's actions were justified or privileged. Public officials can be held personally liable for any actions that may have been "corrupt, malicious, *or* outside and beyond the scope of official duties." *Locus*, 102 N.C. App. at 526 (emphasis added); *see also Thomas v. Sellers*, 142 N.C. App. 310, 313, 542 S.E.2d 283 (2001) ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another."). Plaintiffs identify deals that did not go through as a result of Causey's retaliatory scheme. (*See* D.E. 1 ¶¶ 153 & 157 (AllianceBernstein Holding L.P., Investors Bank, J.P. Morgan

28

Chase & Co., Wells Fargo & Company and the Carlyle Group).)  Plaintiffs also plead more than a "mere expectancy" of these business relationships: they plead that, before Causey's "personally motivated" interference, these relationships were assured to come to fruition. (*Id.* ¶¶ 83, 153 & 157.)  Therefore, Causey's request to dismiss this tortious interference claim should be denied.

### 5. *Plaintiffs State a Claim for Fraud.*

Causey asks the Court to dismiss Plaintiffs' fraud claim on the ground that Plaintiffs' allegations in support are threadbare and conflict with the exhibits attached to his motion. (D.E. 20 at 41–42.)  This conclusory argument ignores the allegations that do support the fraud claim.

*First*, a public official may be liable for fraud in his or her individual capacity.  *See Wells*, 567 S.E.2d at 813.  A fraud claim survives Rule 12(b)(6) dismissal where the plaintiff alleges "with particularity all material facts and circumstances constituting the fraud, although intent and knowledge may be averred generally."  *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 793, 561 S.E.2d 905 (2002).  Plaintiffs allege:

> Causey falsely represented that he and the Department were interested in developing a regulatory framework within which Plaintiffs could conduct operations by: (1) seeking an amicable resolution to ongoing concerns regarding the Department's oppressive oversight of Plaintiffs' business operations; and (2) entering into and honoring the terms of memoranda between the parties.  Causey had no interest in creating, nor any intent to create, such a framework.  Plaintiffs relied on these representations to their considerable detriment.

(D.E. 1 ¶ 161.)  Plaintiffs further allege that Causey engaged in this fraudulent conduct to (1) punish Plaintiffs for supporting his political opponent, and (2) sideline them as a potential threat to his reelection in 2020.  (*Id.* ¶ 7.)

*Second*, a fraud claim against a public official recently survived a motion to dismiss in North Carolina Superior Court.  *See Providence Volunteer Fire Dep't v. Town of Weddington*, No. 18 CVS 000757, 2018 WL 8261835, at *6 (N.C. Sup. Ct. Nov. 27, 2018).  There, the court denied the mayor's motion to dismiss because the plaintiff's allegations were sufficient as a whole to support an inference of corruption or malice.  *Id.*  The complaint alleged that the mayor was "not engaged in the process of adopting prospective, legislative-type rules, but instead was engaged in activities wherein his alleged actions served to single out Plaintiff for termination[.]"  *Id.* at *6–7.  Plaintiffs' allegations are analogous and enough to state an actionable claim for fraud against Causey.

*Third*, and finally, Causey fails to set forth the "conflict" he says exists between Plaintiffs' allegations and the exhibits to his motion.  This leaves Plaintiffs to speculate about what Causey is arguing here.  Nevertheless, Plaintiffs' allegations, when coupled with the holding in *Town of Weddington*, should show that any conflict—real or perceived—should not be resolved at the Rule 12(b) phase.  Therefore, Causey's request to dismiss Plaintiffs' fraud claim should be denied.

> 6.    *The Immunity Provisions of N.C.G.S. Chapter 58 Do Not Bar Plaintiffs' Claims.*

Causey next posits that the Commissioner enjoys immunity for actions he or she takes during a supervision, rehabilitation or liquidation, as well as for actions he or she

takes as a receiver. (D.E. 20 at 45–46 (citing N.C. Gen. Stat. §§ 58-30-62k & 58-30-71).) Causey also notes the Commissioner enjoys immunity for defamation, except in instances of actual malice. (*Id.* at 46–47 (citing N.C. Gen. Stat. § 58-2-160).)

It is unclear whether Causey asserts these provisions in support of Rule 12(b)(6) dismissal, or whether he is merely putting Plaintiffs and the court on notice that certain statutory immunities *may* apply. He never does expressly argue that these provisions *do* apply at this stage.[6]

In any event, these statutory provisions are not relevant here. *First*, Plaintiffs do not allege the existence of a liquidation. *Second*, Plaintiffs do not allege any specific wrongful conduct with respect to actions taken in furtherance of a supervision or rehabilitation. *See* N.C. Gen. Stat. §§ 58-30-62k & 58-30-71. Rather, Plaintiffs allege these proceedings, and specifically rehabilitation, were steps to Causey's "goal of sidelining Plaintiffs in advance of the 2020 elections." (D.E. 1 ¶ 117.) Any allegations regarding conduct that occurred after supervision show the conduct was not in furtherance of the supervision, but rather in furtherance of Causey's personal interests. (*See, e.g.*, *id.* ¶¶ 111–117.)

*Third*, and as already shown elsewhere in this response, Plaintiffs make numerous allegations to support an inference that Causey made defamatory statements about them with actual malice. *See* § II.B.1 & .2 *supra*. Whether these allegations prove actual malice is, like so many other things Causey chooses to contest with his motion, a fact question that

---

[6] It would be improper for Causey to only detail his argument in a reply brief. *See Triad Int'l Maint. Corp. v. Aim Aviation, Inc.*, 473 F. Supp. 2d 666, 670 n.1 (M.D.N.C. 2006) (citing M.D.N.C. LR7.3(h)) (recommendation of Eliason, M.J., adopted by Beaty, J.) (argument that is not in main brief may not be made in reply brief).

should not be resolved at this stage of the proceeding. Thus, Causey's ambiguous invocation of these statutory provisions as possible grounds for dismissal should be disregarded.

## III.   CAUSEY'S STANDING ARGUMENT FAILS

Finally, Causey argues that Plaintiffs lack standing. Causey asserts, without much elaboration, that Plaintiffs' claims are derivative of, and may only be brought by, certain individuals who are not parties to this lawsuit. (D.E. 20 at 43–45.) Specifically, Causey asserts that Plaintiffs, as direct and indirect shareholders of insurance companies that are now in rehabilitation, cannot bring claims against him for "wrongs or injuries to [the shareholders' company] that result in the diminution or destruction of the value of their stock." (*Id.* at 44–45.) This argument is irrelevant.

Plaintiffs recognize "[t]he well-established general rule [] that shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215, 219 (1997). This rule exists to prevent a recovery in favor of one shareholder at the expense of other shareholders who suffered the same harm. *Id.* at 615. Accordingly, this rule asks the courts to focus the inquiry—as in most standing inquiries—on determining who was injured enough to invoke the power of the courts.

The general rule set out in *Barger* does not apply in this instance. As Plaintiffs allege, GBIG Capital is a division of Global Growth and the corporate parent for the insurance companies that Causey regulated; Lindberg is the ultimate member of both GBIG

32

Capital and Global Growth; and Lindberg was the "ultimate controlling person" for these insurance companies at all relevant times. (D.E. 1 ¶¶ 26 & 38.) A recovery in Plaintiffs' favor will not come at the expense of other shareholders, because there are no other shareholders.

Further, Plaintiffs' claims are not derivative of the claims of others. Plaintiffs' claims are, in fact, direct claims. *See generally Semida v. Rice*, 863 F.2d 1156 (4th Cir. 1988) (distinction between a derivative and direct lawsuit turns on which party suffered the injury—the individual or the corporate entity). Plaintiffs allege that Causey's actions were directed toward them based on their support of his political rival and likely 2020 campaign opponent. (D.E. 1 ¶ 63.) The authority and powers that he assumed as Commissioner presented him with the opening to inflict this harm. (*Id.*) Indeed, although placing the insurance companies into rehabilitation has harmed Plaintiffs, Plaintiffs allege other examples of where Causey's conduct harmed them directly. (*See, e.g.*, *id.* ¶¶ 11, 76, 77 & 105 (defamatory and disparaging statements regarding Plaintiffs); ¶¶ 81, 107 & 153 (lost deal under contract); ¶¶ 83, 153 & 157 (numerous lost potential deals).)

Plaintiffs allege Causey developed and set in motion a plan to damage, discredit and diminish Plaintiffs' reputation and ability to operate in the insurance industry. Plaintiffs further allege Causey did so through his position as Commissioner. This position empowered him with regulatory authority over Plaintiffs' North Carolina-domiciled insurance companies. Causey used this authority over the insurance companies to enact his plan. Causey's conduct led to Lindberg's indictment and prosecution, Plaintiffs' reduced stature in the insurance industry, and rehabilitation for Plaintiffs' insurance

33

companies, among other injuries. Therefore, Causey's request to dismiss based on lack of standing should be denied.

**<u>CONCLUSION</u>**

For the reasons set forth above, Causey's Motion to Dismiss should be denied in its entirety.

This the 29th day of July, 2020.

Respectfully submitted,

**Condon Tobin Sladek Thornton PLLC**

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin
N.C. Bar No. 50019
atobin@ctstlaw.com
8080 Park Lane, Ste. 700
Dallas, Texas 75231
Telephone:   214.691.6300
Facsimile:    214.691.6311

**Fox Rothschild LLP**

*/s/ Matthew Nis Leerberg*
Matthew Nis Leerberg
N.C. Bar No. 35406
mleerberg@foxrothschild.com
434 Fayetteville Street, Suite 2800
Post Office Box 27525 (27611)
Raleigh, North Carolina 27601
Telephone:   919.755.8700
Facsimile:    919.755.8800

*Counsel for Plaintiffs*

34

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel certifies that the foregoing Plaintiffs' Response to Defendant's Motion to Dismiss, together with its headings and footnotes, contains fewer than the 12,500 words allowed by this Court, as indicated by Word, the program used to prepare this filing.

This the 29th day of July, 2020.

**Fox Rothschild LLP**

*/s/ Matthew Nis Leerberg*
Matthew Nis Leerberg
N.C. Bar No. 35406
mleerberg@foxrothschild.com
434 Fayetteville Street, Suite 2800
Post Office Box 27525 (27611)
Raleigh, North Carolina 27601
Telephone:   919.755.8700
Facsimile:    919.755.8800

*Counsel for Plaintiffs*

Case 1:20-cv-00248-UA-JEP   Document 25   Filed 07/29/20   Page 35 of 35