IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLOBAL GROWTH, LLC, GBIG )
CAPITAL, LLC, and GREG )
LINDBERG, )
)
        Plaintiffs, )
)
        v. )      1:20-CV-248
)
MIKE CAUSEY, in his official and )
individual capacities, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

    The plaintiffs, Greg Lindberg, Global Growth, LLC, and GBIG Capital, LLC, move to set aside the judgment dismissing their complaint against North Carolina Commissioner of Insurance Mike Causey. In the alternative, the plaintiffs seek leave to amend their complaint. Because the plaintiffs have shown neither clear error of law nor manifest injustice in the Court's previous judgment, and because it would be futile to allow the proposed amendment, their motions will be denied.

    Federal Rule of Civil Procedure Rule 59(e) authorizes a court, in its discretion, to alter or amend its own judgment to correct a clear error of law or to prevent manifest injustice. *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). In essence, the rule "gives the district court a chance to correct its own mistake if it believes one has been made." *Id*. While motions to amend should be freely granted under Federal Rule of Civil Procedure 15(a)(2), they need not be granted if amending the complaint would be futile.

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

### 1. The Court's decision was not wrong, and the proposed amended complaint does not cure the defects.

The plaintiffs contend that the Court's earlier decision was wrong. But they do not cite any new cases in support of their arguments and largely repeat arguments made in response to the earlier motion to dismiss. The Court has already rejected those arguments, and for the several reasons previously stated, dismissal was appropriate. *See* Doc. 29.

The plaintiffs contend that the amended complaint cures the deficiencies in the original complaint as to the various causes of action asserted, Doc. 34 at 5–6, but it merely rewords many of the original paragraphs and adds more conclusory statements and new rhetorical flourishes. *See*, *e.g.*, Doc. 33-1 at ¶¶ 7–13, 63, 85, 89, 92–94, 99–100; *see also* Doc. 33-2 (showing the redline changes between the original complaint and the proposed amended complaint).

The core of the complaint remains unchanged and is equally implausible. As previously noted, Doc. 29 at 6, the allegations in the complaint taken as a whole must give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Nothing in the complaint or proposed amended complaint moves the facts from possible to plausible, and the Court's original observation remains apt:

> Here, the "nub of the complaint," *Twombly*, 550 U.S. at 565, is that Mr. Causey and the Department of Insurance investigated two LLCs and their owner who had supported Mr. Causey's unsuccessful opponent in the previous election and the investigation led to the discovery of financial information and other concerns sufficient to cause numerous other states to take adverse action against the plaintiffs and their insurance companies, lenders to refuse to lend to the plaintiffs, the FBI to investigate the plaintiffs and their insurance companies for criminal conduct, and the Superior Court, with the plaintiffs' consent, to transfer responsibility for the plaintiffs' insurance companies in North Carolina away from the plaintiffs' control, not to mention to result in a criminal conviction for Mr. Lindberg. To find the plaintiffs' allegations of false information, corrupt motives, and constitutional violations plausible, one would have to be willing to believe that insurance regulators in several other states, a number of sophisticated national lenders, a well-respected national media outlet, the FBI, a Superior Court judge, and a federal jury all made important decisions based on unfounded and false information provided by Mr. Causey without independent evaluation or verification. And one would have to believe that an elected official would find the route of choice to dispose of a financial supporter of a political rival to be the making of false claims to the FBI, providing perjured testimony to a federal jury, and facing official and public scrutiny for possible involvement in a bribery scheme.
>
> Perhaps this is theoretically possible. But on the facts alleged, it is more likely that Mr. Causey and the Department investigated legitimate concerns about the financial state of the plaintiffs and their North Carolina insurance companies, concerns shared by private lenders and other state regulatory authorities, and that Mr. Causey had a reasonable basis to believe Mr. Lindberg was attempting to bribe him, as investigated by the FBI and as found by a jury beyond a reasonable doubt. It is more likely that this lawsuit is a back-handed effort to avoid the results of decisions which led to unwanted regulatory oversight, to avoid compliance with a state court order to which the plaintiffs earlier consented and now want to disclaim, and to undermine a jury verdict rendered in a criminal trial.
>
> The plaintiffs cite no case holding that an elected official with regulatory enforcement responsibilities is constitutionally precluded from investigating and regulating companies within his jurisdiction merely because those companies or their owners made financial donations to the campaign of a

rival. And the facts alleged in the complaint make it clear that there were legitimate and rational reasons for regulatory activity. The well-pleaded facts do not permit the court to infer more than "the mere possibility of misconduct." Dismissal is therefore appropriate. *Iqbal*, 556 U.S. at 679.

Doc. 29 at 6–8

### 2. The Court's explanation was adequate.

The plaintiffs also complain that the Court did not "squarely address" every factual allegation asserted in their complaint and every legal argument raised in their briefs, especially as to the First Amendment claim. Doc. 32 at 7, 9; Doc. 37 at 2, 5. The fact that a court does not address in detail every argument made in a brief or discuss every contention and alleged fact in a complaint does not mean that the court did not fairly consider a party's positions. Indeed, the Rules of Civil Procedure are clear that courts are not required to state any findings or conclusions at all when ruling on a Rule 12 motion to dismiss. Fed. R. Civ. P. 52(a)(3).

When a matter is complicated or raises multiple issues, it no doubt facilitates appellate review to be clear about the basis for a decision. *See Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007). And in some cases, when time permits, a detailed explanation for a ruling provides information from which the parties and the public can evaluate the decision, which increases public trust in both the competence and the impartiality of the courts.

But lengthy expositions are not needed in every case. For example, appellate courts do not need the help of district courts to evaluate whether a complaint states a plausible claim for relief; such evaluation is a legal question reviewed *de novo*. In many

4

Case 1:20-cv-00248-CCE-JEP   Document 38   Filed 01/12/21   Page 4 of 9

other cases, a review of the briefing together with a short explanation usually makes it clear why a particular decision was reached, and not every case is of significant public or legal interest. Here, the Court's earlier order granting the motion to dismiss went well beyond the minimum and addressed in substance the dispositive points raised by the briefs.

### 3. The First Amendment retaliation claim fails to state a claim.

To the extent the plaintiffs found the basis of the Court's decision on the First Amendment retaliation claim to be unclear, the following makes it explicit: It is appropriate to dismiss a complaint based on qualified immunity and failure to state a claim at the Rule 12(b)(6) stage when the facts alleged do not plausibly assert constitutional misconduct. *See Iqbal*, 556 U.S. at 666.

To plead a First Amendment § 1983 retaliation claim, the plaintiffs must allege facts that show or give rise to plausible inferences that (1) they engaged in constitutionally protected speech; (2) the plaintiffs' speech caused the defendant to take retaliatory action against the plaintiffs, and; (3) the alleged retaliatory conduct adversely affected the plaintiffs' constitutionally protected speech. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000); *see also Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006). The plaintiffs allege that they supported Mr. Causey's political opponent in an election and accurately state that they have a First Amendment right to contribute to candidates for elected office, *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014), so as to this element, the complaint is plausible. As to the other two elements, which overlap to a fair degree, the original complaint and the proposed

5

amended complaint contain only conclusory assertions without facts showing or tending to show retaliatory conduct adversely affecting the plaintiffs' exercise of their First Amendment rights.

For example, the plaintiffs in their brief point to Mr. Causey's "decision to alter the conclusions in a [third-party consultant's] report that served as the predicate for adverse action later." Doc. 32 at 8. But the paragraph in the complaint cited by the plaintiffs to support this proposition states only, in conclusory terms, that a "member of Causey's team" directed a third-party to include findings that "lacked any legal or factual support." Doc. 1 at ¶ 85. The proposed amended complaint is just as conclusory, changing the analogous paragraph to refer to "Causey's administration" instead of "Causey's team," with no other meaningful changes. Doc. 33-1 at ¶ 85. Neither version of the complaint alleges anywhere else that Mr. Causey altered a third-party report, much less other facts to support a plausible inference that he did so as a predicate to adverse action or with the intention of chilling or restricting the plaintiffs' speech rights. Neither complaint alleges facts to support the assertion of a causal connection between the plaintiffs' support of Mr. Causey's political rival and this alleged alteration.

The plaintiffs also contend that Mr. Causey retaliated against their protected speech by making numerous allegedly false statements to other regulators, law enforcement, and federal authorities. *See*, *e.g.*, Doc. 1 at ¶¶ 11, 76. In particular, the plaintiffs allege that Mr. Causey said (1) the plaintiffs were not "honest operators" in the insurance industry; (2) the plaintiffs' companies were "undercapitalized;" (3) their assets were "worthless;" (4) the plaintiffs siphoned money from the insurance holdings to fund

6

acquisitions and affiliates to the detriment of policyholders; (5) the plaintiffs overstated the value of their assets, and; (6) "falsely told federal authorities that he was offered and had received a campaign contribution of $110,000" from some of the plaintiffs. *Id.* The plaintiffs assert that these statements caused the other regulators and authorities to take actions that adversely affected the plaintiffs. Doc. 32 at 9.

Because these alleged retaliatory acts each involve Mr. Causey's speech, they implicate Mr. Causey's own First Amendment rights, as well as his duty to keep the public and other law enforcement officials informed about potential fraud and ongoing investigations and prosecutions. *See McGraw*, 202 F.3d at 688–89. In this situation, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a person's First Amendment rights, even if defamatory." *McGraw*, 202 F.3d at 687.

The plaintiffs make no allegation that Mr. Causey explicitly threatened to take adverse regulatory action against the plaintiffs on account of their political speech, as was the case in *Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006), nor do they point to any facts from which such threats could be inferred. Rather, Mr. Causey's alleged statements are more like the statements at issue in *McGraw*. There, two public officials made statements to the media that, among other things, the plaintiffs "prey[ed] on the elderly, infirmed and incapacitated," had representatives with "a documented proclivity to violence," and "link[s] to organized crime." *McGraw*, 202 F.3d at 682–83. The Fourth Circuit held that these statements did not constitute actionable retaliation because

7

the plaintiffs failed to show that the statements could "reasonably be interpreted as intimating that [the defendants] would punish, sanction, or take an adverse action against [the plaintiffs]." *Id.* at 689. Moreover, the Fourth Circuit noted that none of the statements "even implied that [the defendants] would utilize their governmental power to silence [the plaintiffs]," or "encourage any action that caused adversity" to the plaintiffs. *Id.* The same is true here.

None of Mr. Causey's alleged defamatory statements imply he will punish, sanction, or take adverse action against the plaintiffs because of their support for Mr. Causey's political rival. Like the statements in *McGraw*, Mr. Causey's alleged statements show only concern about the plaintiffs' illegal or dishonest business practices. These are valid concerns for an insurance regulator to have, and the plaintiffs have not shown how such statements could be interpreted as a threat intended to silence their protected speech.[1] The proposed amended complaint does not include any additional statements from Mr. Causey, nor additional facts to make the plaintiffs' allegations more plausible. *See*, *e.g.*, Doc. 33-2 at ¶¶ 11, 76.

The plaintiffs assert that it is appropriate to infer from these allegedly false and defamatory remarks that Mr. Causey had a general retaliatory intent in taking regulatory action against the plaintiffs. *McGraw* does not support this argument, as noted *supra*. But even if one could infer that Mr. Causey wanted to put the plaintiffs out of business, nothing in those remarks, as alleged, provides even an inkling that his motive was

---

[1] The plaintiffs acknowledge that Mr. Causey's "communications with other regulators may not, by themselves, create a plausible claim for relief." Doc. 32 at 9.

8

retribution for their earlier support of Mr. Causey's campaign opponent or that he spoke with an intent to injure the plaintiffs' exercise of their constitutional speech rights—both of which are required for this cause of action.

The complaint includes many other repeated conclusory allegations that Mr. Causey retaliated against the plaintiffs for their past support of his political opponent. *See*, *e.g.*, Doc. 1 at ¶¶ 1, 7–13, 63, 65–67, 71–72, 74, 84–85, 89, 92–94, 99–100, 104, 106, 109, 111, 116. But as with the alleged retaliatory acts already discussed, these assertions are unaccompanied by specific facts indicating that Mr. Causey had a retaliatory motive to chill or restrict the plaintiffs' First Amendment speech. The fact that the plaintiffs supported Mr. Causey's political opponent in an election does not, by itself, create a plausible inference of retaliatory intent nor intimate a threat of regulatory action should that protected speech continue.

## Conclusion

There is no clear error of law nor manifest injustice in the Court's earlier order, and the Rule 59(e) motion will be denied. Because the proposed amended complaint does not make the plaintiffs' claims any more plausible, allowing the amendment would be futile. The motion to amend the complaint will be denied.

It is **ORDERED** that the plaintiffs' motion for relief, Doc. 31, is **DENIED** and the plaintiffs' motion to amend the complaint, Doc. 33, is **DENIED**.

This the 12th day of January, 2021.

UNITED STATES DISTRICT JUDGE

9

Case 1:20-cv-00248-CCE-JEP   Document 38   Filed 01/12/21   Page 9 of 9